UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:

STEVEN D. SZEPESI
and EVA SZEPESI,

                           CASE NO. 9:10-bk-21618-DHA
            Debtor.       CHAPTER 13
_____/

## DEBTOR'S VERIFIED MOTION FOR AUTHORIZATION OF SALE

COMES NOW Debtor, STEVEN D. SZEPESI and EVA SZEPESI, by and through their undersigned attorney, moves the Court for an Order granting authorization to Debtor to sell real property of the estate, and in support thereof state as follows:

1.    This Court has jurisdiction of this matter under 28 U.S.C. §1334 and 157.

2.    Debtor filed his petition commencing this case under Chapter 13 on September 7, 2010.

3.    Among the assets which constitute property of the Debtor's estate is his homestead located at 8133 Ronda Court, Naples, FL 34109, which has a fair market value of $552,327.00.  See legal description attached as Debtor's (Exhibit "1" attached hereto).

4.    Debtor wishes to sell the real property pursuant to the attached sales contract to George Vyverberg and Paula Vyverberg in the amount of $602,500.00 (Exhibit "2" attached hereto).

5.    Since the filing of the Petition, the Debtor has continued in possession of this homestead real property.

6.   There is currently due and owing on this real property the sum of $500,897.15 to Bank of America, (Exhibit 3 attached hereto) and $251,373.28 to Third Federal (Exhibit 4 attached hereto).

7.   The contract for sale is in an amount sufficient to pay off the first secured creditors in full and the second position mortgagor will receive $58,014.

8.   There are no other liens or encumbrances on this non-homestead real property.

9.   The Debtor represents that the sale of this homestead real property is in the best interests of the estate.

10. The Debtor believes that the proposed purchase price for the homestead real property is fair and reasonable.

WHEREFORE, Debtor moves the Court for authorization to sell the homestead real property through private sale pursuant to 11 U.S.C. §363(b) to to George Vyverberg and Paula Vyverberg in the amount of $602,500.00; that if there is no timely objection to this motion, that the Court enter an Order granting this motion, and for such other and further relief as the Court deems just and proper.

We, STEVEN D. SZEPESI and EVA SZEPESI, being duly sworn on oath, certify that the foregoing is true and accurate to the best of our knowledge and belief.

FURTHER AFFIANT SAITH NOT.

STEVEN D. SZEPESI

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the U.S. Trustee, 501 E. Polk Street, Suite 1200, Tampa, FL 33602, Jon M. Waage, Trustee, P.O. Box 25001, Bradenton, FL 34206-5001,

and all creditors listed on the attached matrix, by first class U.S. Mail, postage fully prepaid, or by electronic notice, this 1st day of February, 2011.

MILLER AND HOLLANDER
Attorneys for Debtor
2430 Shadowlawn Drive, Suite 18
Naples, FL 34112
Telephone (239) 775-2000
Facsimile (239) 775-7953

By: _____
RICHARD J. HOLLANDER
Florida Bar No. 884900
EDWARD R. MILLER
Florida Bar No. 182746
GREGORY A. CHAMPEAU
Florida Bar No. 602531
KATHERINE EVERITT ISKIN
Florida Bar No. 073023

Exhibit "1"

# Quitclaim Deed

**THIS QUITCLAIM DEED**, executed this _15_ day of _APRIL_, 20 _05_,
by first party, Grantor, _STEVEN D. SZEPESI,_
whose post office address is _P.O. BOX NAPLES, FL. 34106_
to second party, Grantee, _EVA SZEPESI,_
whose post office address is _8133 RONDA CT. NAPLES, FL. 34109_

**WITNESSETH,** That the said first party, for good consideration and for the sum of _TEN_
_____ Dollars ($ _10.00_ )
paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said second party forever, all the right, title, interest and claim which the said first party has in and to the following described parcel of land, and improvements and appurtenances thereto in the County of _COLLIER_ ,
State of _FLORIDA_ to wit: _THE SUBJECT PROPRETY:_

_LOCATED AT:_

_8133 RONDA COURT_

_LOT 208. VILLAGES OF MONEREY,_

_UNIT 5 PB 17 PG. 104-106_

_NAPLES, FLORIDA 34109._

**3597173 OR: 3776 PG: 1488**
RECORDED in OFFICIAL RECORDS of COLLIER COUNTY, FL
04/15/2005 at 12:15PM DWIGHT E. BROCK, CLERK

| | |
|---|---|
| CONS | 200000.00 |
| REC FEE | 18.50 |
| DOC-.70 | 1400.00 |
| COPIES | 2.00 |
| MISC | 3.00 |

Retn:
EVA SZEPESI
8133 RONDA CT
NAPLES FL 34109

State of FLORIDA
County of COLLIER
I HEREBY CERTIFY THAT this is a true and
correct copy of a document recorded in
the OFFICIAL RECORDS of Collier County.
WITNESS my hand and official seal, this
date, _4-15-05_
DWIGHT E. BROCK, CLERK OF CIRCUIT COURT

8133 Ronda Ct.
NA 34109

Page 1

© 2004 Socrates Media, LLC
LF298 • Rev. 04/04
www.socrates.com

**IN WITNESS WHEREOF,** The said first party has signed and sealed these presents the day and year first above written.
Signed, sealed and delivered in presence of:

Signature of Witness: _Deborah Sharp_

Print name of Witness: **DEBORAH SHARP**

Signature of Witness: _Gloria Garcia_

Print name of Witness: **GLORIA GARCIA**

Signature of First Party: _____

Print name of First Party: _STEVEN D SZEPESI_

Signature of Second Party: _____

Print name of Second Party: _____

Signature of Preparer _____

Print Name of Preparer _STEVEN D SZEPESI_

Address of Preparer _P.O. BOX 366 NAPLES FL 34106_

State of ____**FLORIDA**____ }
County of ____**COLLIER**____

On ____**APRIL 15, 2005**____ before me, **LORELEI W DENUM, DEPUTY CLERK** _____,
appeared ____**STEVEN DOUGLAS SZEPESI AKA STEVEN D SZEPESI**____
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_Lorelei W Denum_
Signature **LORELEI W DENUM, DEPUTY CLERK**

**DWIGHT E BROCK,**
**CLERK OF CIRCUIT COURT**

Affiant _____ Known **XX** Produced ID
Type of ID _**FL DRIVERS LICENSE**_
(Seal)

Page 2

© 2004 Socrates Media, LLC
LF298 • Rev. 04/04

*Exhibit "2"*



# SALES CONTRACT (RESIDENTIAL IMPROVED PROPERTY)



**SELLER:** *Szeposi*

**SELLER:**

**ADDRESS:**

**BUYER:** *Paula and George Vyverberg*

**BUYER:**

**ADDRESS:**

1 UPON ACCEPTANCE OF THE OFFER OR COUNTEROFFER, SELLER has agreed to sell and BUYER has agreed to buy. UPON THE
2 FOLLOWING TERMS AND CONDITIONS, the real property hereafter legally described ("Property"), together with existing fixtures, including
3 built-in appliances, refrigerator(s), stove(s), dishwasher(s), washer(s), dryer(s), ceiling fan(s), wall-to-wall carpeting, window coverings, garage door
4 opener(s) and remote(s), security and other access devices (including to community property), and *all attached fixtures,*
5 *and all items now located in said property, garage, and on premises.*
6 and the personal property, if any, as listed on the attached inventory, free from liens. The following items are specifically excluded from this
7 Contract:
8
9 Personal property items transferred with the real property are deemed without value, left for the convenience of the parties, and transferred without
10 consideration, unless otherwise agreed to by the parties
11 The address of the Property is: **8133 Ronda Court, Naples  Fla  34109**
12 LEGAL DESCRIPTION OF THE PROPERTY: *Villages of Monterey Unit four, lot 208*
13 _____ , **Collier** _____ County, Florida.
14 IF THE PROPERTY IS A COOPERATIVE PARCEL, THE COOPERATIVE ADDENDUM TO SALES CONTRACT (RESIDENTIAL IMPROVED
15 PROPERTY) IS INCORPORATED HEREIN AND MADE AN INTEGRAL PART OF THIS CONTRACT.
16 If applicable, SELLER shall convey SELLER's exclusive right to use Parking Space(s) _____, Garage(s) _____, Cabana(s)
17 _____; Storage Locker(s) _____, Boat Dock(s) or Slip(s) _____ or other common elements and common areas to which
18 SELLER has an exclusive right of use and the right to convey.
19 1. PURCHASE PRICE: The purchase price (U.S.), which is allocated to real property
20 only unless otherwise stated, shall be payable as follows: ......................$_____ **602,800.00**
21 A. Initial Deposit, in the amount of ......................$_____ **5,000.00**
22 B. Additional Deposit to be received in escrow not later than _____ days after the
23 Effective Date, in the amount of ......................$_____ **25,000.00**
24 C. Proceeds of mortgage, if any [See Paragraph 4.B.] ......................$_____ **482,000.00**
25 D. Proceeds of SELLER mortgage, if any [see Paragraph 4.C.] ......................$_____
26 E. Other: _____ $_____
27 F. Balance of the purchase price, payable from BUYER to closing agent, by local
28 cashier's or official bank check or wire transfer funds at closing, subject to
29 adjustments and prorations, of approximately ......................$_____ **90,500.00**
30 Deposit checks are accepted subject to collection. All deposit(s) shall be held in an escrow account in the State of Florida.

© 2010 Naples Area Board of REALTORS® and Association of Real Estate Professionals, Inc. All Rights Reserved. (NABOR 1/1/2010)
Approved by the Marco Island Area Association of REALTORS®, Inc. and the Collier County Bar Association Page 1 of 10

This software is licensed to [Robert Dowling - John R. Wood REALTORS] www.transactiondesk.com.



31 2.  PERIOD OF OFFER AND EFFECTIVE DATE: This offer is revoked if not accepted, and notice of acceptance delivered to offeror, by
32    6:00   ☐ AM ☒ PM on _____1/4/2011_____ (Insert Date). This time limit shall apply to all offers and counteroffers
33 unless otherwise stated. The Effective Date of this Contract shall be the last date either SELLER or BUYER signs or initials this Contract.
34 INITIALED CHANGES MUST BE DATED, OR THE LATEST DATE SET FORTH ON THIS CONTRACT SHALL BE THE EFFECTIVE DATE.

35 3.  CLOSING  DATE;  CLOSING  LOCATION;  CLOSING  AGENT;  POSSESSION:  Closing   shall   occur   on
36    __2-7-201 1_____ (Insert Date), or prior to that date by written consent of both parties (the "Closing Date") in the county
37 where the Property is located, at an office designated by the closing agent, who shall be selected by BUYER. BUYER shall be the legal owner
38 of the Property as of the closing, and SELLER shall vacate and give possession of the Property at the closing. SELLER shall leave the
39 dwelling(s) on the Property in broom-clean condition and the entire Property free of debris.

40 4.  METHOD OF PAYMENT [SELECT ONE. IF NO SELECTION IS MADE, A. SHALL APPLY]: ☐ A. CASH: BUYER will pay cash, or may
41 obtain a loan, for the purchase of the Property; however, there is no financing contingency; ☒ B. FINANCING CONTINGENCY: BUYER's
42 obligation to purchase the Property is contingent upon BUYER obtaining a loan, in at least the amount shown in 1.C. above, to be secured by a
43 mortgage on the Property at [SELECT ONE. IF NO SELECTION IS MADE, (1) SHALL APPLY]: ☐ (1) an initial or ☐ (2) fixed rate of interest
44 not exceeding __mkt__ % per year, for an amortized term of not less than _____years [30 years if left blank] with a balloon not sooner than
45 _____years. BUYER shall apply for the loan at BUYER's expense not later than ___3___ days after the Effective Date [10 days if left blank],
46 and shall make a good faith effort to obtain said loan. If BUYER fails to give notice to SELLER of waiver of this financing contingency on or
47 before _____20_____ (Insert Date) [30 days after the Effective Date if left blank], either SELLER or BUYER may
48 terminate this Contract at any time. BUYER's termination under this contingency must be accompanied by an Equal Credit Opportunity Act
49 statement of adverse credit action issued by an institutional lender confirming that mortgage financing on the terms set forth in this Contract was
50 denied on grounds that either the Property was unacceptable to the lender or the BUYER financially failed to qualify for said financing terms.
51 SELLER's right to terminate shall cease to exist if BUYER gives notice to SELLER that BUYER has waived this financing contingency prior to
52 SELLER giving BUYER notice of termination. Delivery of documentation evidencing loan commitment or loan approval shall not
53 constitute a waiver of the financing contingency. BUYER acknowledges that once BUYER waives this financing contingency,
54 BUYER's deposit monies are no longer refundable under this Paragraph 4. ☐ C. SELLER FINANCING. The Addendum to Sales Contract
55 SELLER Financing is attached hereto and made a part hereof.

56 5.  CDD/MSTU SPECIAL TAX DISTRICTS: The Property ☐ is ☒ is not located within a Community Development District (CDD) or
57 Municipal Service or Benefit Taxing Unit (MSTU). If the Property is located within a CDD or MSTU, and if there is any outstanding capital
58 balance, BUYER should not execute this Contract until BUYER has received and signed the "Addendum to Sales Contract CDD/MSTU
59 Assessments Disclosure" or similar written disclosure from SELLER setting forth the approximate amount of the capital assessment
60 balance, which BUYER will assume at closing.

61 6.  INSPECTIONS; WAIVER [SELECT ONE. IF NO SELECTION IS MADE, A. SHALL APPLY]: ☒ A. INSPECTIONS: BUYER reserves the
62 right to conduct the inspections provided for in Standard D.2.a., OR ☐ B. DUE DILIGENCE INSPECTIONS: BUYER reserves the right to
63 conduct the inspections provided for in the attached "Addendum to Sales Contract "As is" Sale of Property/Due Diligence," OR ☐ C. WAIVER:
64 BUYER accepts the Property in its "as is" condition as of the Effective Date, including the conditions disclosed in Standard D.1. or in Paragraph
65 7. BUYER may conduct inspections of the Property; however, BUYER's obligation to purchase the Property is not contingent upon the results of
66 any inspections. Under any of the above options, BUYER retains the walk-through inspection rights set forth in Standard D.2.c.(2), (3), and (4).

67 7.  A. OTHER TERMS AND CONDITIONS:

68    *Buyer is pre approved*
69    *Property is a short sale, and must be approved by Lender*
70

SALES CONTRACT (RESIDENTIAL IMPROVED PROPERTY) (NABOR 1/1/2010) Page 2 of 10

This software is licensed to [Robert Dowling - John R. Wood REALTORS] www.transactiondesk.com.



71  **7. A. OTHER TERMS AND CONDITIONS** (Continued from Page 2):
72   see line 69.

73

74

75

76     **B. ADDENDUM:** If additional terms are incorporated into this Contract by separate Addendum, attach same and indicate here ☐.

77  REAL ESTATE TRANSACTION STANDARDS. SELLER AND BUYER ACKNOWLEDGE THAT THEY HAVE EACH RECEIVED AND
78  REVIEWED PAGES 1, 2, AND 3 AND REAL ESTATE TRANSACTION STANDARDS A THROUGH T ON PAGES 4 THROUGH 10 OF THIS
79  CONTRACT, WHICH ARE INCORPORATED IN AND MADE AN INTEGRAL PART OF THIS CONTRACT AND SHALL NOT BE REVISED
80  OR MODIFIED EXCEPT IN PARAGRAPH 7 OF THIS CONTRACT.

_(Seller's Signature)_ ___1/4/11___   _(Buyer's Signature)_ ___1/3/11___

_____Szapesi_____          _Paula  and George Vyverberg_
[Seller's Printed Name]                        (Buyer's Printed Name)

_(Seller's Signature)_   (Date)      _Paula Vyverberg  1-3-2011_
                                     (Buyer's Signature)   (Date)

_(Seller's Printed Name)_            (Buyer's Printed Name)

81                    **COUNTER-OFFER**

82  ☐ SELLER counters BUYER'S offer as noted herein. To accept the counter-offer, BUYER must sign or initial the counter-offer terms
83  and deliver a copy of the acceptance to SELLER by _____ ☐ AM ☐ PM on _____ (Insert Date).
84  ☐ SELLER rejects BUYER'S offer on _____ (Insert Date).

_(Seller's Signature)_            _(Seller's Signature)_

85            **IDENTIFICATION OF BROKERS AND SELLING LICENSEES**
86  Listing Broker:  _Help U Sell Realty_  Selling Broker: _____ JRW
87  Listing Licensee.  _Barry Reed_  Selling Licensee  _Rob Dowling #_
88                    **DEPOSIT RECEIPT**
89  Initial Deposit by ☐ cash ☐ wire or ☒ check received on _____
90  will be held in escrow in accordance with the terms and conditions of this Contract.  (Insert Date),

91  Escrow Agent's Name: _____ Conroy  and Conroy
92  Escrow Agent Address: _Vanderbilt Rd Naples Fla  34109_,
93  Escrow Agent Telephone: _649-5900_  Fax: _____ Email: _____

SALES CONTRACT (RESIDENTIAL IMPROVED PROPERTY)(NABOR 1/1/2010) Page 3 of 10

94
## REAL ESTATE TRANSACTION STANDARDS

95 **STANDARD A - TITLE; TITLING INSTRUCTIONS; ASSIGNMENT; TAX DEFERRED EXCHANGE.**

96 **1. MARKETABLE TITLE:** Title to the Property shall be good and marketable with legal access, subject only to the following
97 exceptions: (a) ad valorem and non ad valorem real property taxes for the year of closing and subsequent years; (b) zoning, building
98 code and other use restrictions imposed by governmental authority; (c) outstanding oil, gas and mineral interests of record, if any; and
99 (d) restrictions, reservations and easements common to the subdivision, provided that none of the foregoing shall prevent use of the
100 Property for residential purposes.

101 **2. TITLING INSTRUCTIONS FROM BUYER; ASSIGNMENT:** Not later than 15 days prior to the Closing Date, BUYER shall deliver to
102 SELLER the name(s), address, manner in which title will be taken, and a copy of any assignment executed by BUYER. No assignment
103 shall release BUYER from the obligations of this Contract unless SELLER consents in writing to such release.

104 **3. TAX DEFERRED EXCHANGE:** If either party intends to treat this transaction as a tax-deferred exchange under I.R.C. Section
105 1031, the other party shall cooperate in accomplishing the exchange, and consents to the assignment of this Contract to a qualified
106 exchange intermediary for that purpose, provided there is no additional cost or delay in closing and the exchanger is not released from
107 liability under this Contract.

108 **STANDARD B - TITLE EVIDENCE; EXAMINATION; DEFECTS; LEGAL ACCESS; CLEARANCE.** Not later than 10 days after the
109 Effective Date, SELLER shall furnish to BUYER a complete copy of SELLER's owners title insurance policy. If the Property is located in Collier
110 County and SELLER fails to furnish a copy of the policy within the above time period, SELLER shall at closing pay $350.00 of the cost of the
111 BUYER's owners title insurance premium. BUYER shall have 30 days after the Effective Date ("Examination Period") for examination of
112 title and determination of legal access. BUYER's obligation to purchase is conditioned on the Property having legal access to and from a
113 public right of way sufficient for residential use. If title is found defective or legal access is found to be lacking, BUYER shall, within the
114 Examination Period, notify SELLER specifying the title defect(s) or lack of legal access, and furnish copies of the title evidence and
115 instruments evidencing such title defect(s) or lack of legal access. If the title defect(s) render(s) title unmarketable, or if SELLER cannot
116 deliver possession, or if there is no legal access, SELLER shall have 30 days after receipt of notice from BUYER (the "Clearance
117 Period") to clear or remove such title defect(s), deliver possession, or provide legal access, at SELLER's expense. SELLER will use
118 diligent effort to correct the title defect(s), deliver possession or provide legal access within the Clearance Period, including the bringing
119 of necessary suits. SELLER shall not be liable to BUYER for damages if SELLER cannot render title marketable, deliver possession or
120 provide legal access. If SELLER does not clear or remove the title defect(s), deliver possession or provide legal access within the
121 Clearance Period, BUYER may elect to accept such title, possession, or access as SELLER can provide, without reduction of the
122 purchase price, or to terminate this Contract. A monetary lien upon the Property shall not be a title defect if said lien can be paid and
123 satisfied from SELLER's proceeds at closing.

124 **STANDARD C - SURVEY; COASTAL CONSTRUCTION CONTROL LINE.**

125 **1. SURVEY AND SURVEY OBJECTIONS:** Unless the Property is a condominium or cooperative unit, SELLER shall furnish to
126 BUYER, not later than 10 days after the Effective Date, a complete copy of any survey of the Property which has been certified to
127 SELLER, if available (together with flood elevation certificate, if applicable). If to SELLER's knowledge there are no improvements or
128 encroachments currently located upon the Property other than as shown on the SELLER's survey, SELLER shall execute an affidavit of
129 "no change" affirming same to BUYER. BUYER may, at BUYER's expense, have the Property surveyed not later than 15 days prior to
130 the Closing Date ("Survey Period"). If the survey, as certified by a registered Florida surveyor, correctly shows: (a) an encroachment
131 onto the Property; (b) that an improvement located on the Property projects onto lands of others; (c) an improvement on the Property
132 violates a zoning, building or other governmental use restriction; (d) an improvement on the Property violates any recorded covenant or
133 restriction, or any covenant of this Contract; or (e) lack of legal access (collectively "Objections"), BUYER may, within the Survey Period,
134 notify SELLER of the Objections and shall furnish a copy of the survey. The Objections shall be treated as a title defect(s). If BUYER
135 fails to obtain a survey within the Survey Period, BUYER waives any right to object to matters which might have been shown on a
136 survey. If BUYER fails to make any Objections within the Survey Period, BUYER waives any Objections.

137 **2. COASTAL CONSTRUCTION CONTROL LINE:** (a) If any portion of the Property lies seaward of the Coastal Construction Control
138 Line, Florida law requires the following disclosure: The property being purchased may be subject to coastal erosion and to federal, state
139 or local regulations that govern coastal property, including the delineation of the coastal construction control line, rigid coastal protection
140 structures, beach nourishment, and the protection of marine turtles. Additional information can be obtained from the Florida Department
141 of Environmental Protection, including whether there are significant erosion conditions associated with the shoreline of the property
142 being purchased. (b) If any portion of the Property lies seaward of the Coastal Construction Control Line, BUYER waives the right to
143 receive a survey or affidavit from SELLER delineating said line upon the Property.

SALES CONTRACT (RESIDENTIAL IMPROVED PROPERTY) (NABOR 1/1/2010) Page 4 of 10

*This software is licensed to [Robert Dowling - John R. Wood REALTORS] www.transactiondesk.com.*



144  **STANDARD D - DISCLOSURES; INSPECTIONS AND REMEDIES; ELECTION AND RESPONSE; WALK-THROUGH INSPECTION;**
145  **RISK OF LOSS.**

146  **1.   DISCLOSURES:**

147      **a.   GENERAL:** SELLER knows of no facts or conditions materially affecting the value of the Property, except those which are
148  readily observable by BUYER, or which have been disclosed to BUYER by SELLER in writing and furnished to BUYER prior to the
149  Effective Date of this Contract or in Paragraph 7.

150      **b.   WETLANDS; SUITABILITY:** Except as disclosed to BUYER in the manner set forth in Standard D.1.a., SELLER does not
151  know of any portion of the Property that has been determined to be wetlands, or of any other condition or circumstance adversely
152  affecting the Property which might impair its suitability for residential use or construction.

153      **c.   RADON GAS:** Florida law required disclosure: Radon is a naturally occurring radioactive gas that, when it has accumulated in
154  a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed
155  federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be
156  obtained from your county health department.

157      **d.   ENERGY EFFICIENCY:** BUYER acknowledges receipt of the Department of Community Affairs brochure on the Florida
158  Building Energy Efficiency Rating System.

159      **e.   LEAD BASED PAINT/PAINT HAZARDS:** If construction of the residence on the Property was commenced prior to 1978,
160  SELLER is required to complete, and SELLER and BUYER are required to sign and attach to this Contract, the Addendum entitled
161  "Lead-Based Paint and/or Lead-Based Paint Hazards: Disclosure of Information and Acknowledgement."

162      **f.   MOLD:** In Florida, mold is commonly found both indoors and outdoors. Interior infestation by certain mold may cause property
163  damage and health problems for some persons.

164      **g.   INSURANCE:** BUYER is advised to immediately apply for casualty insurance in order to obtain a claims history report on the
165  Property to ascertain the availability and cost of said insurance on the Property, which may be affected by past insurance claims on the
166  Property, past insurance claims filed by BUYER and/or by BUYER's credit status. BUYER may terminate this Contract within 10 days
167  after the Effective Date if past insurance claims on the Property increase the cost or restrict the availability of casualty insurance
168  coverage for the Property.

169      **h.   FIRE SPRINKLER/SAFETY SYSTEM RETROFIT:** If the Property is located in a condominium or cooperative building greater
170  than 75 feet in height requiring retrofit for fire sprinklers or other life safety systems as shown on the list created by the local district fire
171  marshal, BUYER may terminate this Contract within the statutory rescission period set forth in Standard I.

172      **i.   PERMITS AND VIOLATIONS:** SELLER does not know of any improvements to the Property which were made without proper
173  permit(s) or certificate(s) of occupancy/substantial completion (where required), or any existing violations of local ordinances or codes,
174  or of any pending code enforcement proceedings affecting the Property. If the Property is located in unincorporated Collier County,
175  SELLER and BUYER acknowledge receipt of the Collier County Code Compliance Residential Program brochure.

176      **j.   PROPERTY TAX DISCLOSURE:** Florida law required disclosure: BUYER should not rely on the SELLER's current property
177  taxes as the amount of property taxes that BUYER may be obligated to pay in the year subsequent to purchase. A change of ownership
178  or property improvements triggers reassessments of the property that could result in higher property taxes. If you have any questions
179  concerning valuation, contact the county property appraiser's office for information.

180      **k.   ZONING:** SELLER has not commenced any proceedings to change the current zoning classification of the Property, nor will
181  SELLER initiate any such proceedings. SELLER has not received notice from any third party(ies) of any proceedings which would affect
182  the current zoning classification of the Property. Should SELLER receive any such notice, SELLER will promptly notify BUYER of same,
183  and if the proposed zoning would prevent the current use of the Property, BUYER may terminate this Contract not later than 5 days after
184  receipt of said notice.

185      **l.   COMMUNITY INVESTIGATION.** BUYER is advised that any condominium, cooperative and/or homeowners' documents
186  received by BUYER may not include important information about the community(ies) where the Property is located, including without
187  limitation pending foreclosures, types and amounts of insurance coverage, current budget and reserve amounts, and status of
188  delinquent assessments; ownership, financial and membership status of private clubs, golf course(s), marina(s), and other amenities;
189  the status of the developer(s) if the community or any portion thereof is developer-controlled; and facts about the surrounding
190  community(ies), school districts and public and government infrastructure plans. SELLER by signing this Contract designates BUYER
191  as SELLER's representative for purposes of obtaining said information.

SALES CONTRACT (RESIDENTIAL IMPROVED PROPERTY) (NABOR 1/1/2010) Page 5 of 10

*This software is licensed to [Robert Dowling - John R. Wood REALTORS] www.transactiondesk.com.*   

192  **2. INSPECTIONS:**

193      **a.   INSPECTION PERIOD; INSPECTION ITEMS:** BUYER shall have 15 days after the Effective Date (the "Inspection Period") to
194  have the Property and improvements thereon inspected at BUYER's expense as follows: (1) all major appliances and equipment; fire
195  sprinkler, irrigation, well, septic, heating, cooling, electrical, plumbing and security systems; major mechanical components; roof
196  (including fascia and soffits); ceilings; structural walls; foundation; swimming pool, spa and pool/spa deck(s), and pool/lanai
197  enclosure(s); seawall; dock(s); boat lifts/davits and related electrical and mechanical components, if any (collectively "Systems and
198  Equipment"), by an appropriately Florida licensed inspection company or licensed contractor, and/or (2) radon gas, by a Florida certified
199  radon measurement technician or specialist, and/or (3) lead-based paint and hazards, by an EPA-certified lead exposure risk assessor,
200  and/or (4) termites or other wood-destroying organisms, by a certified pest control operator, and/or (5) air sampling, surface sampling
201  and/or dust sampling performed by a qualified indoor air quality inspector for the presence of toxic and pathogenic molds, and/or (6) the
202  existence of any open building permits, non-conforming structures or unpermitted improvements to the Property, by an appropriately
203  Florida licensed inspection company, licensed contractor or attorney (collectively the "Inspection Items").

204      All inspections shall be non-invasive and shall not entail any perforation or removal of structural material unless approved in
205  advance by SELLER. Upon reasonable notice, SELLER shall provide access and utilities service to the Property to facilitate the
206  inspections. BUYER shall repair any and all damage to the Property resulting from or caused by the inspections and shall otherwise
207  return the Property to its condition prior to the inspections. BUYER will indemnify and hold SELLER harmless from and against
208  all losses, damages, costs, claims and expenses of any nature, including attorneys fees (collectively "Losses"), and from and against
209  any liability to any person arising from, out of or in connection with the inspections, except as to Losses resulting from negligence or
210  intentional acts or omissions of SELLER.

211      **b.   DEFECTIVE INSPECTION ITEMS; BUYER'S ELECTION AND SELLER'S RESPONSE:** Except as to any facts or conditions
212  disclosed to BUYER in the manner set forth in Standard D.1.a., if any inspection conducted during the Inspection Period reveals:
213  (1) that any Systems and Equipment are not in Working Condition, and/or (2) the presence of radon gas at a level in excess of EPA
214  action levels (4.0 picocuries per litre of air), and/or (3) the presence of lead-based paint or paint hazards requiring abatement under
215  HUD/EPA protocols, and/or (4) the existence of active infestation by termites or other wood-destroying organisms and/or visible damage
216  caused by active or past infestation; and/or (5) the presence of toxic or pathogenic molds within the interior of the dwelling(s) exceeding
217  the levels of such molds measured upon the exterior of the dwelling, and/or (6) any open building permits, non-conforming structures or
218  unpermitted improvements (collectively the "Defective Inspection Items"), BUYER shall, not later than 5 days after expiration of the
219  Inspection Period: (a) notify SELLER of any Defective Inspection Items, and (b) furnish to SELLER a copy of the inspection report(s)
220  documenting the Defective Inspection Items, and (c) notify SELLER of BUYER's election either to: (i) receive a credit from SELLER at
221  closing in lieu of any repairs, replacements, treatment, mitigation or other remedial action necessary to bring the Defective Inspection
222  Items into compliance with the relevant standards set forth above (the "Remedial Action"). If BUYER elects to receive a credit, the
223  amount of the credit shall be equivalent to the estimated costs of any Remedial Action and shall be determined not later than the earlier
224  of SELLER's Response Deadline, or 10 days prior to the Closing Date, or (ii) have SELLER take Remedial Action at SELLER's
225  expense. If BUYER elects (i), SELLER shall not be required to take any Remedial Action. If BUYER makes no election, BUYER shall be
226  deemed to have elected to receive a credit at closing.

227      Not later than 10 days after receipt of the written notice and inspection report(s) from BUYER ("SELLER's Response
228  Deadline"), SELLER shall notify BUYER whether SELLER agrees to BUYER's request. If SELLER refuses BUYER's request by the
229  SELLER's Response Deadline, then BUYER may terminate this Contract not later than 5 days after SELLER's Response Deadline. If
230  BUYER does not elect to terminate this Contract, BUYER is deemed to have accepted the Property in the condition it existed on the
231  Effective Date, except that BUYER retains the walk-through inspection rights set forth in Standard D.2.c.(2),(3), and (4) below. If SELLER
232  fails to respond by the SELLER's Response Deadline, SELLER shall be deemed to have refused BUYER's request, and BUYER may
233  terminate this Contract as set forth above.

234      If any Remedial Action requested by BUYER requires the approval of any community association governing the Property, and
235  SELLER fails to furnish BUYER with written documentation of said association's approval not later than 5 days prior to the Closing Date,
236  BUYER may terminate this Contract.

237      If BUYER does not have the Inspection Items inspected, or fails to do so within the Inspection Period, or fails to timely report
238  any Defective Inspection Items to SELLER, BUYER shall be deemed to have accepted the Property in the condition it existed on the
239  Effective Date, except that BUYER retains the rights set forth in Standard D.2.c.(2), (3), and (4) below.

*This software is licensed to [Robert Dowling - John R. Wood REALTORS] www.transactiondesk.com.*    

240       Remedial Action shall be deemed to have been properly performed when (1) the Systems and Equipment are placed in
241 Working Condition, (2) radon gas within the residence on the Property is reduced to below EPA action levels, (3) lead-based paint and
242 paint hazards on the Property are removed or contained in accordance with HUD/EPA guidelines, (4) any active infestation of termites
243 or other wood-destroying organisms is exterminated or treated, and all visible damage caused by active or past infestation is repaired or
244 replaced; and (5) toxic or pathogenic molds are no longer present within the dwelling(s) at levels exceeding those measured upon the
245 exterior of the dwelling, and (6) written documentation is provided from the appropriate government authority evidencing that all open
246 permits have been closed out and/or all structures lawfully exist on the Property and/or all unpermitted improvements to the Property
247 have now been properly permitted and said permits closed out. SELLER shall make a diligent effort to perform and complete all
248 Remedial Action prior to the Closing Date, failing which a sum equivalent to 200% of the estimated costs of completing the Remedial
249 Action shall be paid by SELLER into escrow at closing pending completion.

250       Systems and Equipment shall be deemed to be in Working Condition if operating in the manner designed to operate. The roof,
251 ceiling, interior and exterior walls, foundation, swimming pool, spa and pool/spa deck(s) shall be in Working Condition if structurally
252 sound and watertight. Seawalls, docks, and pool/lanai enclosure(s) shall be in Working Condition if structurally sound. SELLER shall not
253 be obligated to take Remedial Action or grant a credit in lieu of Remedial Action with regard to any Cosmetic Condition, which is defined
254 as an aesthetic imperfection which does not affect the Working Condition of the item, including corrosion; tears; worn spots;
255 discoloration of floor covering or wallpaper or window treatments; missing or torn screens; nail holes; scratches; dents; chips; caulking;
256 pitted pool surfaces; minor cracks in windows, driveways, sidewalks, pool/spa decks and garage, tile, lanai and patio floors; and cracked
257 roof tiles, curling or worn shingles and limited roof life, so long as there is no evidence of structural damage or leakage.

258       No cost to repair or replace any Systems and Equipment item shall exceed the fair market value of that item if it were in
259 Working Condition.

260     c.  **WALK-THROUGH INSPECTION:** BUYER (or a designated representative) may conduct a walk-through inspection of the
261 Property prior to closing or possession, whichever is earlier, to confirm: (1) completion of any Remedial Action agreed to by SELLER in
262 Standard D.2.b. above, (2) that the personal property items which are being conveyed as part of this Contract remain on the Property,
263 (3) that the personal property items which are not being conveyed as part of this Contract have been removed from the Property, and
264 (4) that SELLER has maintained the Property as required in Standard D.2.d. below. Upon reasonable notice, SELLER shall provide
265 access and utilities service to the Property to facilitate the walk-through inspection.

266       If SELLER fails to maintain the Property as required in this Standard, or if the Property suffers any loss or damage prior to the
267 Closing Date, SELLER shall, at BUYER's request, either perform Remedial Action prior to the Closing Date, or provide a credit
268 agreeable to BUYER at closing for the estimated cost of the Remedial Action, failing which, SELLER shall escrow at closing a sum
269 equivalent to 200% of the estimated costs of the Remedial Action, for payment to appropriately licensed contractor(s) performing the
270 Remedial Action.

271       Notwithstanding the foregoing, if any casualty loss or damage occurring after the Effective Date of this Contract renders the
272 Property at closing either: (a) uninsurable under the residential underwriting standards of the Citizens Property Insurance Corporation,
273 or (b) unfit for habitation under state or local building codes, either BUYER or SELLER may terminate this Contract.

274     d.  **MAINTENANCE OF PROPERTY; RISK OF LOSS:** SELLER shall maintain the Property (including without limitation the lawn,
275 shrubbery, and landscaping) in the condition existing on the Effective Date until the Closing Date or date of possession, whichever is
276 earlier, except for ordinary wear and tear and any Remedial Action agreed to by SELLER under Standard D.2.b. above. Any future loss
277 and/or damage to the Property between the Effective Date of this Contract and the Closing Date or date of possession, whichever is
278 earlier, shall be at SELLER's sole risk and expense. SELLER shall maintain all existing casualty insurance on all improvements on the
279 Property until disbursement.

280 **STANDARD E - SELLER'S INSTRUMENTS AND EXPENSES.** SELLER shall pay for and provide, when applicable: (1) the title
281 evidence or credit specified in Standard B; (2) if the Property is located in Lee or Charlotte County, the premium for the owners title
282 insurance policy issued by the closing agent selected by BUYER, and the charges for title search and title continuation through the date
283 of deed recording; (3) preparation of statutory warranty deed (or special warranty deed if SELLER is a fiduciary), bill of sale with
284 warranties of ownership and freedom from encumbrances, condominium/homeowner association estoppel letter(s), tenant estoppel
285 letter(s), copies and assignment(s) of lease(s), and an affidavit regarding liens, possession, and withholding under FIRPTA, in a form
286 sufficient to allow "gap" coverage by title insurance; (4) mortgage payoff letter from existing lender(s); (5) documentary stamps on deed;
287 (6) real estate broker's compensation (to be disbursed by closing agent at closing); (7) utility services to the Closing Date; (8) the full
288 amount of condominium/homeowner association special assessments and governmentally imposed liens or special assessments (other
289 than CDD/MSTU assessments which are addressed in Paragraph 5), which are a lien or a special assessment that is certain as to the
290 identity of the lienor or assessor, the property subject to the lien or special assessment, and the amount of the lien or special
291 assessment, on or before the Effective Date; (9) SELLER's attorney fees and closing fees, (10) if SELLER is subject to withholding
292 under FIRPTA, reasonable charges associated with withholding, escrowing and/or remitting funds, and/or preparing the withholding
293 certificate application and/or tax return related thereto.

**SALES CONTRACT (RESIDENTIAL IMPROVED PROPERTY) (NABOR 1/1/2010) Page 7 of 10**

*This software is licensed to [Robert Dowling - John R. Wood REALTORS] www.transactiondesk.com.*

294 **STANDARD F - BUYER'S INSTRUMENTS AND EXPENSES.** BUYER shall pay for and provide, when applicable, including any sales
295 tax due thereon: (1) recording fee for deed; (2) all costs of any institutional loan secured by BUYER; (3) the premium for lender title
296 insurance policy, and if the property is located in Collier County, the premium for the owners title insurance policy issued by the closing
297 agent selected by BUYER and the charges for title search, and title continuation through the date of deed recording; (4) recording
298 membership approval; (5) survey; (6) condominium/homeowner association membership transfer fee; (7) condominium/homeowner
299 association resale transfer fee/capital contribution; (8) pending liens or special assessments (liens or special assessments other than
300 those described in Standard E(8)). If it is determined that there are pending liens or special assessments which do not fall under
301 Standard E(8) above, which were not disclosed in writing to BUYER by SELLER prior to or concurrent with the execution of this
302 Contract, and which exceed a sum equivalent to 1% of the purchase price, BUYER may terminate this Contract, unless SELLER agrees
303 in writing to pay the portion of such pending liens or special assessments in excess of 1% of the purchase price. SELLER agrees to pay
304 into escrow at closing a reasonable sum to insure that the excess will be paid; (9) BUYER's attorneys fees and closing fees; and
305 (10) BUYER shall promptly pay and indemnify and hold SELLER harmless against any claims or liens upon the Property for surveyor or
306 other services furnished to the Property at the request of BUYER.

307 **STANDARD G – PRORATIONS; CREDITS.** These items will be prorated as of the Closing Date, with BUYER charged with and entitled
308 to the Closing Date, or the possession date, whichever is earlier: (1) real and personal property taxes based on the current year (if
309 available), otherwise on the prior year's bill (without discount or exemptions no longer available in the year of closing). If completed
310 improvements exist on the Property for which a certificate of occupancy was issued as of January 1st of the year of closing, which did
311 not exist on January 1st of the prior year, taxes shall be estimated for proration by applying the current year millage rate to the current
312 year taxable value of the Property. If the current year millage rate is not fixed, the prior year millage rate shall be applied. If the current
313 year taxable value is not fixed, the taxes shall be estimated for proration by applying the most current fixed millage rate to a sum
314 equivalent to 80% of the purchase price. A tax proration based upon any estimated tax shall, at the request of either party, be re-
315 prorated based on the actual tax bill amount; (2) interest on any assumed indebtedness; (3) rents; (4) condominium/homeowner
316 association assessments and CDD/MSTU operating and maintenance assessments; (5) county waste assessments; and (6) appliance
317 service contracts assumed by BUYER. BUYER shall receive from SELLER at closing a credit equivalent to the amount of any security
318 deposit and prepaid rents held by SELLER, and any accrued interest thereon, or alternatively, ownership or an assignment of the
319 account in which the deposits and prepaid rents, and any accrued interest thereon, are held.

320 **STANDARD H - HOMEOWNERS' ASSOCIATION DISCLOSURE.** If the Property is located within and governed by a mandatory
321 homeowners' association, the following provisions are incorporated into this Contract:

322 **IF THE DISCLOSURE SUMMARY REQUIRED BY SECTION 720.401, FLORIDA STATUTES, HAS NOT BEEN PROVIDED TO THE**
323 **PROSPECTIVE PURCHASER BEFORE EXECUTING THIS CONTRACT FOR SALE, THIS CONTRACT IS VOIDABLE BY BUYER**
324 **BY DELIVERING TO SELLER OR SELLER'S AGENT OR REPRESENTATIVE WRITTEN NOTICE OF THE BUYER'S INTENTION**
325 **TO CANCEL WITHIN 3 DAYS AFTER RECEIPT OF THE DISCLOSURE SUMMARY OR PRIOR TO CLOSING, WHICHEVER**
326 **OCCURS FIRST. ANY PURPORTED WAIVER OF THIS VOIDABILITY RIGHT HAS NO EFFECT. BUYER'S RIGHT TO VOID THIS**
327 **CONTRACT SHALL TERMINATE AT CLOSING.**

328 BUYER SHOULD NOT EXECUTE THIS CONTRACT UNTIL BUYER HAS RECEIVED AND READ THE **"HOMEOWNERS'**
329 **ASSOCIATION DISCLOSURE SUMMARY,"** WHICH IS ATTACHED TO AND MADE A PART OF THIS CONTRACT.

330 **STANDARD I - CONDOMINIUM RESALE DISCLOSURE; VOIDABILITY RIGHTS.** If the Property is a condominium unit(s), the
331 following provisions are incorporated into this Contract: THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN
332 NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS AND LEGAL
333 HOLIDAYS, AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER AND RECEIPT BY BUYER OF A
334 CURRENT COPY OF THE DECLARATION OF CONDOMINIUM, ARTICLES OF INCORPORATION, BYLAWS, AND RULES OF THE
335 ASSOCIATION, AND A COPY OF THE MOST RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED
336 QUESTIONS AND ANSWERS DOCUMENT IF SO REQUESTED IN WRITING. ANY PURPORTED WAIVER OF THESE
337 VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT
338 MORE THAN 3 DAYS, EXCLUDING SATURDAYS, SUNDAYS AND LEGAL HOLIDAYS, AFTER THE BUYER RECEIVES THE
339 DECLARATION, ARTICLES OF INCORPORATION, BYLAWS, AND RULES OF THE ASSOCIATION, AND A COPY OF THE MOST
340 RECENT YEAR-END FINANCIAL INFORMATION AND FREQUENTLY ASKED QUESTIONS AND ANSWERS DOCUMENT IF
341 REQUESTED IN WRITING. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING. BUYER shall also be
342 entitled to receive a copy of the governance form required by Florida Statutes, and the above stated right of BUYER to cancel this
343 Contract shall apply to BUYER's receipt of said governance form in the same manner as applies to the other above-referenced
344 condominium documents. BUYER, by its execution of this Contract, hereby requests a current copy of the above referenced
345 condominium documents.

SALES CONTRACT (RESIDENTIAL IMPROVED PROPERTY) (NABOR 1/1/2010) Page 8 of 10

*This software is licensed to [Robert Dowling - John R. Wood REALTORS] www.transactiondesk.com.* 

346  **STANDARD   J   –   CONDOMINIUM/HOMEOWNER   ASSOCIATION   PROVISIONS;   MEMBERSHIP   APPROVAL.**
347  Any condominium/homeowner association reserve account(s) is included in the purchase price. If association membership approval is
348  required, BUYER shall, not later than 10 days after the Effective Date, make application for same in the name(s) in which title will be
349  taken, and shall comply with all governing requirements of the association and be responsible for securing membership approval. If no
350  approval has been obtained prior to closing, either BUYER or SELLER may terminate this Contract. SELLER shall obtain a letter(s) from
351  the association(s) which sets forth the amounts, periods and payment status of assessments and transfer fees and resale capital
352  contributions, and deliver same to the BUYER not later than 15 days prior to the Closing Date. Some condominiums exist upon a
353  leasehold estate or have associated recreational leases which may require the payment of rents, taxes, maintenance, replacement and
354  repair. BUYER takes title subject to any such lease. If the condominium exists solely upon a leasehold estate, SELLER will assign its
355  sublease to BUYER at closing.

356  **STANDARD K – MORTGAGE LENDER POLICIES.** If BUYER elected to obtain institutional mortgage financing under Paragraph 4.B,
357  the policies of the lending institution shall prevail as to the procedures for closing and disbursement of mortgage loan proceeds.

358  **STANDARD L – ESCROW; ESCROW AGENT(S).** The escrow agent who accepts in escrow the deposit(s) paid under this Contract
359  (the "Escrow Agent") shall hold the deposit(s) within the State of Florida in escrow until the earlier of: (1) delivery to another Escrow
360  Agent for closing, who by acceptance agrees to these terms and becomes the Escrow Agent (the Escrow Agent holding the deposit(s) is
361  authorized to so transfer the funds and is relieved of all liability for the funds delivered); (2) delivery of the deed, with payment of the
362  deposit(s) as part of the purchase price of the Property; (3) such time as BUYER may be entitled to return of the deposit(s); or
363  (4) delivery pursuant to written direction of the parties, at which time the Escrow Agent shall pay all of the deposit(s) to the party(ies)
364  entitled thereto. The Escrow Agent shall not be liable for the payment of any interest, damages, attorneys fees or court costs in any
365  action brought to recover the deposit(s) held in escrow, or any part thereof, unless the Escrow Agent shall fail or refuse to pay over any
366  such deposit(s) pursuant to a judgment, order or decree that shall be final beyond possibility of appeal. In any proceeding which litigates
367  the disposition of the deposit(s), the Escrow Agent shall be entitled to be paid reasonable attorneys fees and court costs, which shall be
368  paid by the non-prevailing party. The Escrow Agent has no duty to collect or attempt to collect any deposit or check given as a deposit,
369  but shall give the parties written notice of: (a) any deposit that is not received not later than 5 days after its due date, and (b) any deposit
370  check that is not paid on presentation, not later than 5 days of learning of its dishonor. If the Escrow Agent is a licensed real estate
371  broker, the Escrow Agent shall comply with the requirements of Chapter 475, Florida Statutes.

372  **STANDARD M - FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT (FIRPTA) WITHHOLDING.** A SELLER who is a U.S. citizen
373  or resident alien and who furnishes BUYER with an affidavit attesting to same, is exempt from FIRPTA withholding. If SELLER is a
374  foreign person or entity, BUYER shall deduct and withhold from the purchase price, or collect from SELLER if the net proceeds are
375  insufficient, 10% of the purchase price (the "FIRPTA Funds"), and remit same to the Internal Revenue Service (the "IRS") within 10 days
376  after the Closing Date, unless: (1) the purchase price is not more than $300,000.00 and BUYER executes a certificate establishing that
377  BUYER's acquisition of the Property is for use as BUYER's residence in accordance with the Internal Revenue Code and all applicable
378  regulations related to that exemption; or (2) SELLER furnishes to BUYER, not later than the Closing Date, proof of submittal to the IRS
379  of an application for withholding certificate, in which event the closing agent (or other third party mutually designated by SELLER and
380  BUYER) shall hold the FIRPTA Funds in escrow pending receipt of the withholding certificate, and shall remit the sum reflected in the
381  withholding certificate to the IRS within 10 days of receipt of the withholding certificate, and shall promptly refund any remaining balance
382  to SELLER. SELLER shall hold BUYER harmless and indemnify BUYER for not withholding or collecting the FIRPTA Funds or for
383  withholding and remitting only such reduced amount reflected in the withholding certificate. BUYER shall provide to SELLER evidence
384  of remittance of all or any portion of the FIRPTA Funds to the IRS. The failure of either party to comply or to allow compliance with the
385  requirements of FIRPTA and related regulations shall constitute a breach of this Contract.

386  **STANDARD N – QUICK CLOSING; INSURABILITY; CLOSING DATE EXTENSION.** If the Closing Date does not allow sufficient time
387  for performances by SELLER and BUYER within the time frames and by the deadlines set forth in this Contract, the parties agree to
388  undertake and complete all performances, inspections, surveys, examinations, delivery of documents, notices, satisfaction of
389  contingencies and all other actions required of or allowed to either party prior to the Closing Date, except that the statutory time period
390  set forth in Standards H and I shall not be affected by this provision. If BUYER is unable to obtain hazard, flood, wind or homeowners
391  insurance at a reasonable rate due to extreme weather conditions, BUYER may delay the Closing Date up to 5 days after such
392  coverage becomes available. If such coverage does not become available for a period of 30 continuous days, either SELLER or BUYER
393  may terminate this Contract.

*This software is licensed to [Robert Dowling - John R. Wood REALTORS] www.transactiondesk.com.*       

394 **STANDARD O - TIME OF PERFORMANCE AND REMEDIES.** Time is of the essence for closing title. If BUYER does not perform
395 BUYER's obligations hereunder (except as excused by SELLER's default) all deposits made shall be paid to SELLER as liquidated
396 damages, which shall be SELLER's exclusive remedy. If SELLER does not perform SELLER's obligations hereunder (except as
397 excused by BUYER's default), BUYER may enforce this Contract by a suit for specific performance, damages, or may terminate this
398 Contract.

399 **STANDARD P - LITIGATION; ATTORNEYS FEES AND COSTS.** In connection with any litigation concerning this Contract, venue
400 shall be in the county where the Property is located, and the prevailing party shall be entitled to recover reasonable attorneys fees and
401 court costs, including on any appeals, from the non-prevailing party. The term "prevailing party" shall include SELLER, BUYER, and any
402 broker acting in an agency or non-agency relationship recognized under Chapter 475, Florida Statutes. For purposes of this Standard,
403 any such broker shall be an intended third party beneficiary.

404 **STANDARD Q - NOTICES, DISCLOSURES, AND DOCUMENTS.** All notices and disclosures must be in writing. Unless a party is
405 required by law to deliver notices, disclosures, or documents directly to the other party, all notices and disclosures required or permitted
406 under this Contract shall be effective when given by a party or that party's broker or attorney to the other party or said other party's
407 broker or attorney. Delivery of homeowners' or condominium documents required under Standards H and I respectively to BUYER's
408 broker or attorney shall not constitute delivery to the BUYER.

409 **STANDARD R - MISCELLANEOUS.** (1) The parties have agreed to deal in good faith and to diligently work toward a timely closing.
410 (2) The singular case or tense shall include the plural case or tense. (3) This Contract may only be modified in writing by the parties.
411 (4) All references in this Contract to a number of days shall mean calendar days. (5) Except as otherwise expressly provided
412 by law, if any deadline falls on a Saturday, Sunday, or federal legal holiday, said deadline shall be extended to the following
413 business day. (6) As used herein, the terms "real estate broker" or "broker" shall include all real estate brokers, brokerage corporations
414 or business entities, and their respective selling licensees involved in this transaction. (7) All title evidence, condominium documents
415 and other documents provided to BUYER by or on behalf of SELLER are the property of SELLER until closing and shall be immediately
416 returned to SELLER if this Contract is terminated. (8) If either SELLER or BUYER is permitted to terminate this Contract, said party shall
417 do so by giving notice of said termination to the other party, whereupon all deposits made by BUYER shall be promptly returned to
418 BUYER, this Contract shall be of no further force and effect, and the parties shall have no further liability to one another hereunder
419 except as set forth herein. (9) The headings used in this Contract are for convenience of reference only and shall not be used for
420 interpreting the meaning of any provisions of this Contract. (10) All provisions of this Contract which by their nature or context require
421 performance or provide rights after the Closing Date, including without limitation the provisions of Standard P, shall survive closing.
422 (11) Signatures and initials communicated by electronic or facsimile transmission shall be binding. (12) This Contract and any addenda
423 and amendments hereto may be signed in counterparts, and said counterparts shall collectively constitute the entire agreement of the
424 parties. (13) Upon reasonable notice, SELLER shall provide access to the Property to appraiser(s) and surveyor(s) retained by BUYER.

425 **STANDARD S - NEGOTIATED TERMS; REPRESENTATIONS.** Any and all terms negotiated between the parties must be written into
426 this Contract. BUYER's decision to buy was based upon BUYER's own investigations of the Property. BUYER holds the broker(s)
427 harmless from all liability or loss caused by SELLER's failure to disclose material facts in accordance with this Contract, or SELLER's
428 representations regarding the Property's condition, or from broker's referral, recommendation, or retention of any vendor. The parties
429 agree that assistance to a party by a broker does not, and will not, make the broker responsible for performance.

430 **STANDARD T - BINDING CONTRACT; LEGAL COUNSEL.** THE PARTIES ARE NOT REQUIRED TO USE ANY PARTICULAR
431 FORM OF CONTRACT. TERMS AND CONDITIONS SHOULD BE NEGOTIATED BASED UPON THE RESPECTIVE INTERESTS,
432 OBJECTIVES AND BARGAINING POSITIONS OF THE PARTIES. APPROVAL OF THIS FORM BY THE COLLIER COUNTY BAR
433 ASSOCIATION AND ASSOCIATIONS OF REALTORS DOES NOT CONSTITUTE AN OPINION THAT ANY OF THE TERMS AND
434 CONDITIONS IN THIS CONTRACT SHOULD BE ACCEPTED BY A PARTY IN A PARTICULAR TRANSACTION. THIS IS A LEGALLY
435 BINDING CONTRACT FORM. EACH PARTY ACKNOWLEDGES THAT PRIOR TO SIGNING THE CONTRACT, THE CLOSING
436 EXPENSES HAVE BEEN EXPLAINED, REAL ESTATE TRANSACTION STANDARDS A THROUGH T HAVE BEEN RECEIVED AND
437 REVIEWED, AND THAT PARTY HAS BEEN ADVISED BY THE REAL ESTATE BROKER TO SEEK LEGAL COUNSEL AND TITLE
438 INSURANCE TO PROTECT THAT PARTY'S INTEREST IN CONNECTION WITH THE TITLE STATUS AND CLOSING OF THIS
439 TRANSACTION. BUYER AND SELLER ARE ADVISED TO CONSULT AN APPROPRIATE PROFESSIONAL FOR LEGAL, TAX,
440 PROPERTY CONDITION, ENVIRONMENTAL, AND OTHER SPECIALIZED ADVICE. THIS CONTRACT SHALL BE BINDING UPON
441 AND INURE TO THE BENEFIT OF THE PARTIES HERETO, THEIR HEIRS, ADMINISTRATORS, PERSONAL REPRESENTATIVES,
442 AND SUCCESSORS IN INTEREST.

SALES CONTRACT (RESIDENTIAL IMPROVED PROPERTY) (NABOR 1/1/2010) Page 10 of 10

*This software is licensed to [Robert Dowling · John R. Wood REALTORS] www.transactiondesk.com.*



 **ADDENDUM TO SALES CONTRACT: SHORT SALE** 

This Addendum is to the Sales Contract entered into between:

_Ellas Szopesi_ ("SELLER") and

_George and Paula Vyverberg_ ( BUYER")

relating to the following described real property ("Property")

_8133 Ro___ at_ Naples FL 34155

1. Approval of the Lender  This Contract is contingent upon: (a) the Seller's lender(s) and/or other lien holder(s) (collectively the "Lender") approval of the purchase price, terms of the Contract and the HUD-1 settlement statement and (b) the Lender's agreement to accept a payoff which is less than the balance due on the loan or other indebtedness and (c) the Lender's release and satisfaction of the mortgage(s) and/or other lien(s) upon receipt of discounted payoff amount(s) (collectively, "Lender Approval"). If Seller does not deliver notice to Buyer that Lender has approved the purchase price and contract terms within __60__ days from Effective Date ("Approval Deadline") (45 days if left blank), either party may thereafter terminate the Contract by delivering notice to the other  Buyer's right to terminate shall cease to exist if Seller gives notice to Buyer that Seller has waived this contingency or that Lender Approval has been obtained prior to Buyer giving Seller notice of termination.

2. Time periods: All time periods under the Contract shall commence from the date Seller either delivers notice to Buyer of Lender Approval or the date Seller has waived this contingency
   Buyer and Seller agree to extend the Closing Date in the Contract, not to exceed _____ days (10 days if left blank) if the Lender requires additional time to complete the short sale transaction.

3. Acknowledgement by Buyer: Buyer acknowledges that the Lender is not a party to the Contract and therefore is not obligated to approve the Contract or to effectuate a short sale involving the Contract after approving the Contract and its terms  Buyer further acknowledges that Seller is not liable for delays caused by Lender or costs and expenses incurred by Buyer under the Contract if Lender does not complete the short sale after Lender approves.

This addendum amends the above-referenced Contract between Seller and Buyer  All other non-conflicting provisions of that agreement remain in full force and effect.

SELLER AND BUYER HAVE EACH BEEN ADVISED TO OBTAIN THEIR OWN INDEPENDENT LEGAL COUNSEL TO OVERSEE AND SUPERVISE THE SHORT SALE TRANSACTION.

SELLER HAS BEEN ADVISED TO CONSULT WITH ACCOUNTING AND/OR OTHER TAX AND FINANCIAL ADVISORS REGARDING THE TAX AND OTHER FINANCIAL IMPLICATIONS OF ENTERING INTO A SHORT SALE TRANSACTION, INCLUDING WITHOUT LIMITATION THAT THE AMOUNT OF ANY INDEBTEDNESS FORGIVEN BY LENDER MAY BE TAXABLE AND THAT THE SELLER'S CREDIT RATING MAY BE ADVERSELY AFFECTED WHICH COULD IMPACT SELLER'S ABILITY TO BORROW OR ENTER LEASES IN THE FUTURE OR THE RATES OF INTEREST CHARGEABLE TO SELLER.

SELLER ACKNOWLEDGES THAT THE LENDER MAY NOT FORGIVE ANY UNPAID INDEBTEDNESS AND THAT SELLER MAY BE REQUIRED TO SIGN A PROMISSORY NOTE FOR ALL OR A PORTION OF SUCH UNPAID INDEBTEDNESS.

_____ (Date)   _____ (Buyer's Signature)   _1/3/2011_ (Date)

_____ (Seller's Signature)  _1/4/11_ (Date)   _____ (Buyer's Signature)  _1-3-2011_ (Date)

© 2006 Naples Area Board of REALTORS® and Association of Real Estate Professionals, Inc. All Rights Reserved [NABOR 8 11-2006]

This software is licensed to [Robert Dowling - John A. Wood REALTORS] www.transactiondesk.com

 

# ADDENDUM TO SALES CONTRACT
## "AS IS" SALE OF PROPERTY/DUE DILIGENCE

This Addendum is to the Sales Contract entered into between:

_____ SZEPesi _____ ("SELLER") and

_____ George and Paula Vyverburg _____ ("BUYER")

relating to the following described real property ("Property"):

8133 Ronda ct Naples Fla 34109.

SELLER has disclosed to BUYER any facts and conditions which materially affect the value of the Property and which are known to SELLER and not readily observable to BUYER. Notwithstanding any provisions to the contrary in this Contract, BUYER and SELLER hereby understand and agree:

This paragraph replaces Standard D.2.a. and Standard D.2.b. of the Contract (Residential Improved Property): BUYER shall have _____days [15 days if left blank] after the Effective Date (the "Due Diligence Period") to evaluate the Property and may, but is not required to, utilize the services of any professional or licensed inspector(s) to conduct inspection(s). If BUYER determines, in BUYER's sole discretion, that the Property is not acceptable to BUYER for any reason, BUYER may terminate this Contract prior to expiration of the Due Diligence Period. If BUYER does not elect to terminate this Contract, SELLER shall have no obligation to make any repairs or replacements to the Property, other than as required by the provisions of Standard D.2.d. BUYER's right to terminate hereunder has been bargained for between the parties, and each party acknowledges full and adequate consideration has been received for this provision.

The Property, appurtenances, fixtures, and any included personal property being sold to BUYER will be conveyed to BUYER in their "AS IS" condition as of the Effective Date.

BUYER's failure to terminate this Contract in the manner provided herein shall constitute a waiver of the right to terminate under the provisions of this Addendum.

_____ 1/6/11    _____ 8/16/10
(Seller's Signature)        (Date)       (Buyer's Signature)              (Date)

_____ _____    _____ 8 /16/0
(Seller's Signature)        (Date)       (Buyer's Signature)              (Date)

©2010 Naples Area Board of REALTORS® and Association of Real Estate Professionals, Inc. All Rights Reserved. (NABOR 1/1/2010)

This software is licensed to [Robert Dowling · John R. Wood REALTORS] www.transactiondesk.com.

**Bank of America**

Home Loans

*Payoff Department, Mail Stop NC4-105-01-40*
*4161 Piedmont Pkwy*
*Greensboro, NC 27410-8110*

Exhibit "3"

# From:

**Name:**   NBKSOYQ

# To:

**Name:**   Automated Payoff
**Fax Number:**   1-239-597-7155
**Voice Phone:**

**Number of pages including this cover page:**   3
**Date and time of transmission:**   January 20, 2011

---

IMPORTANT MESSAGE REGARDING PROPERTY LOCATED AT:
8133 Ronda Court

The following pages contain the requested payoff information and instructions.

In an effort to expedite and more efficiently process your payoff request, please follow the four easy steps below:

1. Write the loan number and borrower's name or property address on the check (ex. XXXX-X, Smith)

2. Place the payoff check on top of any accompanying support documents.

3. Do not staple the actual check to any accompanying support documents.

4. All correspondence and requests for **release documents** should be sent to:

Customer Service
CA6-919-01-41
PO Box 5170
Simi Valley, CA  93062-5170

**Do NOT send payoff funds to this address.**

If there is an error with this transmission, or it is incomplete, please call 1-800-669-6607 for assistance.

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL OR EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND DESTROY THIS DOCUMENT.                                                              THANK YOU.

DMDFAXCR 7451 06/15/2007



**Bank of America**

**Home Loans**

*Payoff Department, Mail Stop NC4-105-01-40*
*4161 Piedmont Pkwy*
*Greensboro, NC 27410-8110*

# PAYOFF DEMAND STATEMENT

> **Statement Void After
> February 1, 2011**

Statement Date
January 18, 2011

**BAC Home Loans Servicing, LP**
**Loan No.:    94786818**

Automated Payoff
Faxed Demand
xx
xx 99999

**Name & Property Address:**
Steven D & Eva Szepesi
8133 Ronda Court
Naples, FL 34109

Faxed to:    1-239-597-7155

## This loan is in Foreclosure.
The expiration of this demand is the sooner of the above Void After date or the foreclosure sale date.

(CV-JMB-ARM)

| PAYOFF CALCULATION | | |
|---|---|---|
| | Principal Balance as of 11/01/2009 | $449,247.96 |
| | Interest from 11/01/2009 to 02/01/2011 | 31,447.35 |
| | County Recording Fee | 10.00 |
| | Uncollected Late Charges | 393.09 |
| | Fees Due | 4,558.30 |
| | Additional Fees and Costs | 818.50 |
| | Escrow Balance Due | 14,361.95 |
| Total Amount Required to Release Lien (As of February 1, 2011) | | **$500,837.15** |
| | Expedited Payoff Service Fee | 60.00 |

**Total Amount Due**                                    **$500,897.15**

*AMENDED DEMAND STATEMENTS ARE SENT AUTOMATICALLY IF THE TOTAL AMOUNT DUE INCREASES BEFORE FEBRUARY 1, 2011.*

To provide you with the convenience of an extended 'Statement Void After' date, the Total Amount Due may include estimated fees, costs, additional payments and/or escrow disbursements that will become due prior to the 'Statement Void After' date, but which are not yet due as of the date this Payoff Statement is issued.  You will receive a refund if you pay the Total Amount Due and those anticipated fees, expenses, or payments have not been incurred.

### INTEREST CALCULATIONS

For all full month payment periods, interest is calculated on a monthly basis.  Accordingly, interest for all full months, including February, is calculated as 30/360 of annual interest, irrespective of the actual number of days in the month.  For partial months, interest is calculated daily on the basis of a 365 day year.

Adjustable rate mortgage loans may have more than one interest rate in effect during the period in which this demand statement applies.  Amended demand statements are sent automatically if the total amount due increases before February 1, 2011.

| Daily Interest[1] | From | To | Interest rate |
|---|---|---|---|
| 43.6768 | 01/01/2011 | 02/01/2011 | 3.5000 |

[1] Daily Interest = Principal Balance x Interest Rate ÷ 365

### PAYOFF INSTRUCTIONS

Payoff funds must be made payable to **BAC Home Loans Servicing**, LP and will be accepted by **WIRE** or **CERTIFIED FUNDS ONLY**.  They **MUST** reference the BAC Home Loans Servicing, LP loan number, property address and borrower's name in the OBI (Originator Beneficiary Information) field of the wire transfer or on the face of the check and must be sent per the instructions below.  Failure to do so may cause delays resulting in additional interest due or the return of the funds to the remitter. Funds received after 4:00 p.m. Eastern Time may be posted the following business day.

Wire Funds to:                                    Mail CERTIFIED Funds to:                     [×]
Beneficiary Bank:  Bank of America              BAC Home Loans Servicing, LP

<table>
<tr><td>Wire Funds to:<br>Beneficiary Bank: Bank of America<br>ABA Routing #: 0260-0959-3<br>Beneficiary Acct Name: MRC<br>MRC Account #12356-19173<br>Reference: Steven D & Eva Szepesi<br>Loan Number: 94786818</td><td>Mail CERTIFIED Funds to:<br>BAC Home Loans Servicing, LP<br>Attention: Payoff Department, Mail Stop NC4-105-01-40<br>4161 Piedmont Pkwy<br>Greensboro, NC 27410-8110</td></tr>
</table>

**PLEASE DO NOT SEND CERTIFIED FUNDS TO THE WIRE FUNDS INSTRUCTIONS ABOVE AS CERTIFIED FUNDS MUST BE PROCESSED IN OUR PAYOFF DEPARTMENT.**

This communication is from BAC Home Loans Servicing, LP, the Bank of America company that services your home loan.

**Please call 1-800-669-5833 for updated payoff information within 24 hours of submitting funds.**

*For Internal Use Only: 8*  See following page for important information.  S310L1 11944 03/30/2010

CRPRDNRBS42b        1/20/2011 12:28:53 PM  PAGE   3/003   Fax Server

| BAC Home Loans Servicing, LP<br>Loan No: 94786818 | Statement Date:<br>January 18, 2011 | Statement Void After:<br>February 1, 2011 |
|---|---|---|

The following escrow items may be disbursed prior to our receipt of payoff funds:

| ESCROW ACCOUNT INFORMATION | Escrow Item | Last Pmt Date | Last Pmt Amt | Next Due Date |
|---|---|---|---|---|
| | County Tax | 11/08/2010 | 5,167.69 | 11/01/2010 |
| | Hzd:Lender Placed Insurance | 04/12/2010 | 4,270.00 | 05/10/2011 |

## IMPORTANT INSTRUCTIONS ON PAYMENT OF SHORTAGE

If the payoff amount actually received by BAC Home Loans Servicing, LP to pay off your loan is insufficient to pay the amount due as described in this statement, we may treat your payment as an instruction to deduct the shortage from any refund you would receive of monies from your escrow account. We will not do this, however, if (i) the shortage is greater than $2,000.00, or (ii) you have instructed us not to do so. You may contact our Customer Service Department for this purpose at 1-800-669-6607.

## AUTOMATIC PAYOFF UPDATES

BAC Home Loans Servicing, LP provides free estimated payoff information through an automated telephone system at 1-800-669-5833, if all payoff figures are available. You have elected to purchase BAC Home Loans Servicing, LP's written expedited payoff service, for a charge of $30.00, which includes free automatic updates through the expiration of the demand. **The payment of this fee is NOT a condition for the release or reconveyance of the Security Instrument.** If you request further written payoffs, they will be subject to an additional charge of $30.00 per statement, if allowed by applicable law.

## PAYOFF OVERAGES

If BAC Home Loans Servicing, LP receives funds greater than the amount required to pay off your loan, we will automatically process the overage within 14 days after payoff and return the excess amount to you. **If an address change is being submitted on behalf of the borrower, the form MUST be signed by the borrower for the address change to take effect.**

## BANKRUPTCY DISCHARGE

If you have received a discharge of this debt in a bankruptcy, you have no personal obligation to repay this debt. However, the lender may still foreclose on your property if the debt is not paid as required by the loan documents. This payoff statement is provided at your request and for your convenience. This is not an attempt to collect a debt that has been discharged, nor a demand for payment.

## ADDITIONAL INFORMATION

**The payoff amount indicated in this statement is subject to change for various reasons, including but not limited to the following:**

[*]

The payoff amount indicated in this statement is subject to change for various reasons, including but not limited to the following: [3]

* We may not have posted a recently submitted payment; (Please DO NOT place a stop payment on any check.)
* A fee may be assessed if a payment is returned unpaid by your financial institution for any reason;
* Additional or anticipated fees and costs may be incurred relating to collection, foreclosure, bankruptcy, or other defaults on your loan;
* Adjustments may be required to reflect disbursements made by, or payments owed to, your prior lender if the servicing of your loan was transferred to BAC Home Loans Servicing, LP;
* Late charges may be assessed for delinquent payments received after: 02/16/2011;
* Funds may be deducted from your escrow account to pay taxes, insurance or other escrow items that become due.

Automated Payoff Request Line: 1-800-669-5833                    Fax: 1-888-836-8714

Nota: Si necesita la información incluida en la Demanda de Liquidación traducida al español, por favor comuníquese con nuestro Departamento de Servicio al Cliente al 1-800-669-6607.



Exhibit "4"

Delivered Email
mland@its5star.com

January 13, 2011

Island Title 5 Start Agency, LLC
6300 Trail Blvd.
Naples, FL 34108

RE: Third Federal Loan No. 5912402115
    Steven D. Szepesi
    Eva Szepesi
    8133 Ronda Ct.
    Naples, FL 34109

To Whom It May Concern:

Be advised that the actual payoff of the captioned loan through the closing date is
$251,373.28.  Pursuant to a request for a short sale on the above captioned property,
Third Federal Savings will accept $58,014.51 or total proceeds, which ever is greater, via
the sale transaction on the Ronda property as long as the following apply.

Sales price $602,500.00 by buyer Vyverberg.
Szepesi not to receive any funds from this transaction.

This approval is good through February 13, 2011. *Upon closing, proceeds are to be sent
to my attention along with a copy of the final HUD settlement statement to the address
below.*  Once received, Third Federal will release the mortgage on the above referenced
property.

You should contact an attorney, tax consultant, or the IRS regarding any tax or credit
consequences on a short sale.  If you should have any other questions, please contact
Keren Jones at (216) 441-7318.

Sincerely,

Mike Martin
Manager, Special Servicing

**Member FDIC**

Third Federal, 7007 Broadway Avenue, Cleveland, Ohio 44105
216-429-5000 • 1-800-THIRD-FED • www.thirdfederal.com

Label Matrix for local noticing
113A-9
Case 9:10-bk-21618-DHA
Middle District of Florida
Ft. Myers
Tue Feb 1 11:57:01 EST 2011

BAC Home Loan Servicing, L.P.
7105 Corporate Dr.
Plano, TX 75024-4100

Sam M. Gibbons United States Courthouse
801 N. Florida Ave. Suite 555
Tampa, FL 33602-3899

BAC Home Loans Servicing LP
400 National Way
Mail Stop: CA6-919-01-23
Simi Valley, CA 93065-6414

BAC Home Loans Svcg LP
PO Box 5170
Simi Valley CA 93062-5170

CANDICA L.L.C
C O Weinstein And Riley, PS
2001 Western Avenue, Ste 400
Seattle, Wa 98121-3132

CR Evergreen, LLC
MS 550
PO Box 91121
Seattle, WA 98111-9221

Capital One
PO Box 85167
Richmond VA 23285-5167

Capital Recovery IV LLC
c/o Recovery Management Systems Corporat
25 SE 2nd Avenue Suite 1120
Miami FL 33131-1605

Chase
PO Box 15049
Wilmington DE 19850-5049

Chase
PO Box 15298
Wilmington DE 19850-5298

Collier Co Code Enforcement
2800 Horseshoe Dr N
Naples FL 34104-6917

Collier Co Tax Collector
3301 E Tamiami Trl Bldg C1
Naples FL 34112-4997

Department of Revenue
PO Box 6668
Tallahassee, FL 32314-6668

(p)DISCOVER FINANCIAL SERVICES LLC
PO BOX 3025
NEW ALBANY OH 43054-3025

Discover Bank
Dfs Services LLC
PO Box 3025
New Albany, OH 43054-3025

Edison Ins Co
PO Box 2916
Bigfork MT 59911-2802

Esad Hajrija
28 Armstrong Ave
Yonkers NY 10701-5402

Exxon Mobil
Po Box 688940
Des Moines IA 50368-8940

GE Money Bank
c/o Recovery Management Systems Corporat
25 SE 2nd Ave Suite 1120
Miami FL 33131-1605

George & Paula Vyverberg
8133 Ronda Court
Naples FL 34109-7170

Home Depot
PO Box 653002
Dallas TX 75265-3002

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

JC Penney
PO Box 981131
El Paso TX 79998-1131

Lowe's Commercial Svc/GEMB
PO Box 103104
Roswell GA 30076-9104

Monterey Single Family HOA
1944 Costello Dr #206
Naples FL 34103

National Capital Management, LLC.
8245 Tournament Drive
Suite 230
Memphis, TN 38125-1741
USA

Office of US Attorney
Attn Civil Process Clerk1
400 North Tampa St Suite 3200
Tampa, FL 33602-4774

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

Shell Card Ctr
PO Box 689081
Des Moines IA 50368-9081



The Bank of New York
c/o Smith Hiatt & Diaz
PO Box 11438
Fort Lauderdale FL 33339-1438

Third Federal
7007 Broadway Ave
Cleveland OH 44105-1490

Verizon Wireless
PO BOX 3397
Bloomington, IL 61702-3397

Verizon Wireless
c/o Vantage Soursing
PO Box 6787
Dothan AL 36302-6787

Eva Szepesi
P.O. Box 366
Naples, FL 34106-0366

Jon Waage
P O Box 25001
Bradenton, FL 34206-5001

Katherine E. Iskin
Miller & Hollander
2430 Shadowlawn Dr., Ste 18
Naples, FL 34112-4801

Richard J Hollander
Miller & Hollander
2430 Shadowlawn Drive, Ste. 18
Naples, FL 34112-4801

Steven D Szepesi
P.O. Box 366
Naples, FL 34106-0366

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Discover
PO Box 30943
Salt Lake City UT 84130

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

(d) Internal Revenue Service
PO Box 21126
Philadelphia PA 19114

Portfolio Recovery Associates, LLC
POB 41067
Norfolk VA 23541

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(d) CANDICA L.L.C.
C O Weinstein And Riley, PS
2001 Western Avenue, Ste 400
Seattle, Wa 98121-3132

End of Label Matrix
Mailable recipients    38
Bypassed recipients     1
Total                  39

